**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JASON JORDAN,**

      **Petitioner,**

    **v.**                      **CASE NO. 2:04-cv-899**

                                **JUDGE MARBLEY
MAGISTRATE JUDGE KEMP**

**DEBORAH TIMMERMAN-COOPER,[1]**

      **Respondent.**


**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, petitioner's amended petition, respondent's supplemental return of writ and supplemental memorandum, petitioner's traverse, and the exhibits of the parties.

Petitioner's request for a copy of the trial transcript, Doc. No. 40, is **DENIED**, as moot.  As noted by respondent, a copy of the trial transcript has been made a part of the record and was served on petitioner.  *See Respondent's Opposition to Petitioner's Motion for Transcript; Exhibit I to Return of Writ.*   For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be **GRANTED** on petitioner's claim four, in which he asserts that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004), that petitioner's

---

[1] Respondent indicates in the supplemental Return of Writ that Timmerman-Cooper is the proper party respondent, and therefore she is substituted as the named respondent in place of Jeffrey Wolfe, who was previously named as the respondent in this case.

sentence be **VACATED** and the State re-sentence petitioner within sixty (60) days or release him. It is recommended that the remainder of petitioner's claims be **DISMISSED**. Petitioner's request for an evidentiary hearing, *see Traverse*, is **DENIED**.

## I. FACTS

The facts of this case are discussed in this Court's prior *Report and Recommendation*, July 28, 2005, Doc. No. 12, but are repeated here. Ohio's Fifth District Court of Appeals summarized the facts as follows:

> On May 22, 2001, while observing traffic on Interstate 70, Trooper Warner, of the Ohio State Highway Patrol, noticed a vehicle traveling fifty-five miles per hour, which is ten miles per hour under the posted speed limit. The vehicle appeared to have been involved in an accident and had a lot of smoke coming out from underneath it. Trooper Warner also noticed the driver of the vehicle was not wearing a seatbelt and did not make an effort to put it on after Trooper Warner began following him.
>
> As Trooper Warner passed the vehicle, on the left side, he further noticed the vehicle did not have a front license plate displayed. Based upon the license plate violation, Trooper Warner decided to stop the vehicle. Upon approaching the vehicle, Trooper Warner learned that appellant was a passenger, in the vehicle, being driven by Mr. Mitchell. Neither appellant nor Mr. Mitchell were able to produce a registration or proof of insurance for the vehicle and both gave inconsistent statements regarding the registered owner of the vehicle.
>
> Trooper Warner decided to detain the vehicle until he could verify whether the owner of the vehicle authorized Mr. Mitchell to use it. Trooper Warner frisked Mr. Mitchell and placed him in the back of his patrol cruiser. Appellant remained in the vehicle. While talking to Mr. Mitchell, Trooper Warner learned that Mitchell had been in jail for trafficking in drugs. Upon learning this information, Trooper Warner requested a K-9 unit be dispatched to the scene.
>
> Trooper Ball arrived on the scene, with his K-9 partner, Ringo, and conducted a search of the vehicle. Ringo alerted to the driver's door. Trooper Warner removed appellant from the vehicle, conducted a

2

pat-down search of appellant's person and had appellant sit on the interstate guardrail between Trooper Warner's and Trooper Ball's cruisers. Trooper Ball conducted the search of the vehicle. During the search, Trooper Warner broke visual surveillance of appellant. The search of the vehicle produced a small amount of marijuana.

While Trooper Ball conducted the search of the vehicle, a passing motorist, Roger Wallace, observed appellant throw something over the guardrail. Mr. Wallace used his cellular phone to call the Ohio State Highway Patrol and inform them of what he had just observed. Shortly thereafter, Trooper Reimer arrived on the scene. Trooper Reimer informed Trooper Warner about Roger's phone call. Trooper Reimer searched behind the guardrail, where appellant had been seated, and found a plastic baggie containing a white, hard substance later determined to be 13.489 grams of crack cocaine.

Exhibit E to Return of Writ.

## II. PROCEDURAL HISTORY

Petitioner was indicted by the April 2001 term of the Muskingum County grand jury on possession of ten to twenty-five grams of crack cocaine, in violation of O.R.C. §2925.11(A), and possession of two hundred to one thousand grams of marijuana, in violation of O.R.C. §2925.11(A). Exhibit A to Return of Writ. While represented by counsel, petitioner proceeded to jury trial, and on May 20, 2003, petitioner was found guilty of possession of crack cocaine. On May 5, 2003, petitioner was sentenced to seven years incarceration, such sentence to run consecutive to his federal sentence. Exhibit B to Return of Writ. Represented by new counsel, petitioner filed a timely appeal of his conviction to the Fifth District Court of Appeals. He asserted the following assignments of error:

1. Defendant was denied the effective assistance of counsel and due process of law in violation of his rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and under Article I, §§10 and 16 of the Ohio Constitution.

2. Mr. Jordan was denied due process of law and a fair trial, in

3

violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution, and under Article I, §16 of the Ohio Constitution, by repeated acts of prosecutorial misconduct in closing argument.

3.  The trial court erred when it failed to state on the record at sentencing its reasons for imposing a sentence in excess of the minimum sentence available, under Ohio Revised Code §2929.14(D).

Exhibit C to Return of Writ.  On March 8, 2004, the state appellate court affirmed the judgment of the trial court.  Exhibit E to Return of Writ.  Proceeding *pro se*, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  He asserted the following propositions of law:

1.  Defendant was denied the effective assistance of counsel and due process of law in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States, and under Article 1, §§10 and 16 of the Ohio Constitution.

2.  Mr. Jordan was denied due process of law and a fair trial in violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution, and under Article 1, §16 of the Ohio Constitution, by repeated acts of prosecutorial misconduct in closing argument.

Exhibit F to Return of Writ.  On July 14, 2004, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question.  Exhibit G to Return of Writ.

On October 22, 2004, petitioner filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B).  *See* Exhibit 2 to Return of Writ.  The state appellate court granted the application and appointed new counsel.  Petitioner asserted as follows in his reopened appeal:

I. APPELLANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO ASSERT FOURTH AMENDMENT

4

VIOLATIONS AT BOTH TRIAL AND INITIAL APPEAL.

II. APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO ASSERT SPEEDY TRIAL VIOLATIONS AT BOTH TRIAL AND INITIAL APPEAL.

III. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO JURY TRIAL BY MAKING CERTAIN FINDINGS IN VIOLATION OF *BLAKELY V. WASHINGTON* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

IV. THE TRIAL COURT ERRED IN SUMMARILY DENYING APPELLANT THE RIGHT TO 'FIRE' HIS RETAINED COUNSEL AND APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE SAID ISSUE ON APPEAL.

V. TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE IN FAILING TO RAISE, AS ERROR, INFLAMMATORY REMARKS IN CLOSING ARGUMENT AT PAGES 217-218.

*Id.; State v. Jordan*, 2005 WL 3047527 (Ohio App. 5 Dist. November 9, 2005).  On November 9, 2005, the appellate court sustained in part petitioner's fourth assignment of error, and remanded the case to the trial court

for further inquiry on the record on [petitioner's] claim of unsatisfactory counsel over and above any issues which have already been addressed either in the present appeal or in *Jordan I.* If the trial court finds the claim is unfounded, the trial court may re-enter the judgment and sentence. Accord *State v. Murphy* (Feb. 22, 2000), Richland App.No. 99CA48.

*Id.*  Petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court, in which he again raised the same claims that were raised in his reopened appeal.  Exhibit 3 to Return of Writ.  On March 29, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Exhibit 5 to Return of Writ.

Meanwhile, pursuant to the decision of the Ohio Court of Appeals, petitioner's case was remanded

to the trial court and petitioner

> returned from incarceration on December 12, 2005, for a hearing.
>
> Appellant's appellate counsel was notified on such date by the bailiff due to his name appearing on the case file but without instructions to do so from the court. (T. at 5).
>
> Upon conclusion of the hearing, the court determined that Appellant's claim as to his prior counsel had no merit and the prior sentence was reimposed.

*See* Exhibit 11 to Return of Writ.  Again represented by counsel, petitioner filed a timely appeal.

He asserted the following claims:

> I. THE TRIAL COURT ERRED IN PROCEEDING WITH A HEARING WHEN APPELLANT WAS DENIED THE RIGHT TO COUNSEL AND NO VOLUNTARY WAIVER WAS MADE FOR COUNSEL.
>
> II. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO PROCEDURAL DUE PROCESS BY SCHEDULING A HEARING WITHOUT NOTICE AND GIVING A MEANINGFUL OPPORTUNITY TO DEFEND.
>
> III. THE COURT ERRED IN CONDUCTING A HEARING WITHOUT COUNSEL AND WITHOUT SWORN TESTIMONY.
>
> IV. THE TRIAL COURT ERRED IN DENYING A REQUEST FOR A NEW TRIAL BY FINDING THAT APPELLANT'S CLAIM OF UNSATISFACTORY COUNSEL IS UNFOUNDED."

*Id.; State v. Jordan*, 2006 WL 2076185 (Ohio App. 5 Dist. July 18, 2006).  On July 18, 2006, the

appellate court affirmed the judgment of the trial court.  *Id.*  Still represented by counsel, petitioner

filed a timely appeal to the Ohio Supreme Court.  He raised the following propositions of law:

> 1.  Appellant is entitled to assistance of counsel, procedural due

6

process, including notice of hearing and testimony being taken under
oath.

2.  Appellant is entitled to represent himself pro se and was especially
prejudiced by his retained counsel who was suspended from the
practice of law during trial, rarely met with appellant, failed to file
pretrial motions, and failed to object to inflammatory remarks.

Exhibit 13 to Return of Writ.  On December 13, 2006, the Ohio Supreme Court denied leave to

appeal and dismissed the appeal as not involving any substantial constitutional question.  Exhibit

14 to Return of Writ.

On September 17, 2004, petitioner filed the instant *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of

the Constitution of the United States based upon the following grounds:

1.  Petitioner was denied due process of law and the effective
assistance of trial counsel in violation of U.S.C.A. Amend. 5, 6, and
14.

Trial counsel failed to object to irrelevant and inadmissible
testimony; failed to request a limiting instruction when warranted,
failed to object to improper arguments by opposing counsel, and
counsel's overall performance fell below an objective standard of
reasonableness, when counsel failed to file a motion for discovery.

2.  Petitioner was denied due process of law and the effective
assistance of counsel in violation of U.S.C.A. Const. Amend. 5, 6,
and 14.

Trial counsel was suspended from the practice of law by the Ohio
Supreme Court during petitioner's jury trial and still continued to
represent petitioner.

3.  Petitioner was denied due process of law in violation of the

7

U.S.C.A. Amend. 5 and 14.

Prosecutor committed misconduct by making arguments to the jury that were not supported by facts in the record, invoking images of violent crime, inflaming petitioner's jury with facts outside the record to bolster the credibility of key prosecution witnesses, and other due process violations by the prosecutor.

4. Petitioner was denied due process of law in violation of the U.S.C.A. Const., Amend., 5, 6, and 14.

Petitioner's sentence was enhanced by the trial court without any findings and without any facts being submitted to the jury before said enhancement by the court.

On December 6, 2005, the Court dismissed claims one through three, but granted petitioner's request for a stay of proceedings on claim four, pending completion of petitioner's reopened appeal. On March 19, 2007, petitioner filed a notice of exhaustion. Doc. No. 27. The Court reactivated proceedings. On May 25, 2007, petitioner filed an amended petition, in which he additionally asserts as follows:

5. Petitioner was denied the right to counsel at a hearing when no voluntary waiver was made.

6. Petitioner was denied procedural due process when the court scheduled a hearing with no notice to the petitioner and by not allowing him adequate time to prepare for the hearing.

7. Petitioner was denied procedural due process when the court scheduled a hearing and allowed testimony that was not sworn under oath or affirmation.

8. Petitioner was denied a request for a new trial when the claim supporting his reason was denied, when it clearly should have been granted.

8

9.  The petitioner was denied his right to represent himself during his trial proceeding.

*See* Doc. No. 31.[2]

### III.  CLAIM FOUR

In claim four, petitioner asserts that his sentence violates *Blakely* because the trial court "made factual findings that should have been made by the jury, since these facts would expose the petitioner to an increased amount of punishment." *Amended Petition*, at 5. Specifically, petitioner contends that the trial court impermissibly sentenced him based upon "four recidivism factors" testified to by the probation officer at his sentencing hearing. *See Petitioner's Rule 26(B) Appellate Brief, Response to Petitioner's Objections, Exhibit B*, Doc. No. 19.   The state appellate court rejected this claim as follows:

> [A]ppellant contends the trial court erred by making certain findings during sentencing in violation of *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. We disagree.
>
> Appellant specifically claims that the probation investigator's testimony at the sentencing hearing, concerning the presumption of prison and the existence of four recidivism factors, violated *Blakely, supra,* in which the United States Supreme Court held that if a defendant's sentence is increased beyond the maximum range allowed for the offense, the facts to support that increase must either be heard by a jury under a beyond a reasonable doubt standard, or admitted by the defendant. *See, also, Apprendi v. New Jersey* (2000), 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435.
>
> However, where a defendant's individual sentences are each less than

---

[2]  It does not appear that the statute of limitations bars amendment of the petition to include petitioner's amended claims, *see Mayle v. Felix*, 545 U.S. 644 (2005), and respondent has not raised the issue of statute of limitations as to these claims.  *See Supplemental Return of Writ*.

the statutory maximum, *Blakely* and *Apprendi* are not applicable. *See State v. Taylor,* 158 Ohio App.3d 597, 821 N.E.2d 192, 2004-Ohio-5939, ¶ 25-26. In the case *sub judice*, appellant was convicted on one count of possession of crack cocaine, a felony of the second degree, and sentenced to seven years in prison. In Ohio, the range for a second-degree felony is between two and eight years. R.C. 2929.14(A)(2).

Accordingly, we herein find no merit in appellant's claim, pursuant to *Blakely,* that the trial court erroneously sentenced him by relying on facts that were not admitted by appellant nor found by a jury.

Appellant's Third Assignment of Error is therefore overruled.

Exhibit 2 to Return of Writ; *State v. Jordan, supra.*

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. §2254(e)(1), the state court's factual findings are entitled to a presumption of correctness:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id*. Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

10

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet this standard here.

As noted, *supra*, petitioner was convicted on one count of possession of drugs (crack cocaine), in violation of O.R.C. 2925.11(A), a second degree felony punishable by two to eight years incarceration. *See* Exhibit B to Return of Writ; O.R.C. §2929.14(A)(2). Under Ohio law, a prison term was mandatory for petitioner's conviction on possession of ten to twenty-five grams of crack cocaine. *See Exhibits A and B* to Return of Writ; O.R.C. §2925.11(C)(4)(d). The trial court imposed seven years incarceration, such sentence to run consecutively to the federal sentence that petitioner was serving, in a judgment entry that indicates in relevant part as follows:

The Court had considered the record, all statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code §2929.11 and its balance of seriousness and recidivism factors under

11

Ohio Revised Code §2929.12.[3]

_____

[3]  O.R.C. §2929.12 provides:

(A) In determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed, the court shall consider the risk that the offender will commit another crime and the need for protecting the public from the risk; the nature and circumstances of the offense; the victim impact statement prepared pursuant to section 2947.051 of the Revised Code, if a victim impact statement is required by that section; any statement by the victim pursuant to section 2930.14 of the Revised Code; and the history, character, and condition of the offender and his need for correctional or rehabilitative treatment.

(B) The following do not control the court's discretion, but shall be considered in favor of imposing a longer term of imprisonment for a felony for which an indefinite term of imprisonment is imposed:

(1) The offender is a repeat or dangerous offender;

(2) Regardless of whether the offender knew the age of the victim, the victim of the offense was sixty-five years of age or older, permanently and totally disabled, or less than eighteen years of age at the time of the commission of the offense;

(3) The victim of the offense has suffered severe social, psychological, physical, or economic injury as a result of the offense.

(C) The following do not control the court's discretion, but shall be considered in favor of imposing a shorter minimum term of imprisonment for a felony for which an indefinite term of imprisonment is imposed:

(1) The offense neither caused nor threatened serious physical harm to persons or property, or the offender did not contemplate that it would do so;

(2) The offense was the result of circumstances unlikely to recur;

(3) The victim of the offense induced or facilitated it;

12

The Court finds the Defendant has been convicted of:

Possession of Drugs (Crack Cocaine), a felony of the second degree, in violation of ORC §2925.11(A), and pursuant to ORC §29825.11(C)(4)(d) [sic], subject to a mandatory sentence.

In that the Defendant has been found guilty of a second degree felony a prison term is consistent with the purposes and principles of sentencing in Ohio Revised Code 2929.11. The Court has considered the purposes and principles under Revised Code 2929.11, the factors under §2929.12. The Court finds that the defendant has a prior adjudication, a history of criminal convictions, was under sanction when he committed the offense, and shows no genuine remorse. The Court finds based on the factors present, a prison term is warranted, and further finds that a prison term is mandatory in this matter. The Court further finds that a minimum sentence would demean the seriousness of the offenses and would not adequately protect society.

Exhibit B to Return of Writ. Probation officer Doug Pollock stated as follows at petitioner's sentencing hearing:

_____

(4) There are substantial grounds tending to excuse or justify the offense, though failing to establish a defense;

(5) The offender acted under strong provocation;

(6) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;

(7) The offender is likely to respond quickly to correctional or rehabilitative treatment.

(D) The criteria listed in divisions (B) and (C) of this section do not limit the matters that may be considered in determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed.

13

In this case there is one charge, that being a felony of the second degree, which carries a presumption for prison. In that regard there are four recidivism likely factors. First, that the offender was under court sanction when the offense was committed. Second, there is a prior adjudication of delinquency and a history of criminal conviction. Third, defendant shows no genuine remorse. And fourth, there is a pattern of continual criminal behavior on the part of the defendant. And based on the factors present, the presumption for prison is upheld. The appropriate sentence would be for a period of state incarceration if the Court so found.

COURT: Mr. Pollock, what court sanction was the defendant under at the time of the commission of this offense?

A. The defendant is currently serving a two-year sentence for a federal charge.

*Sentencing Transcript*, Exhibit I-5 to Return of Writ, at 5. Petitioner had been convicted in federal court for counterfeiting. *Id.*, at 11. The trial court stated as follows when imposing its sentence:

... I believe that you shouldn't be punished because you exercised... your constitutional right to a trial, but you have the risk that the Court might hear aggravating circumstances, which would enhance the penalty, or I might hear at the trial mitigating circumstances that would make it appropriate for a lesser sentence than was discussed [during guilty plea negotiations].

After hearing the trial, I have to conclude that there were some aggravated circumstances. I can't block out of my mind what I heard at the trial. And the jury made the decision to find you guilty of a felony of the second degree.

You wish to make a statement before I pronounce sentence, sir?

DEFENDANT: No, Your Honor.

COURT: Okay. Based upon what I know about the entire case, now that I've heard it and the jury made a decision, I'm going to sentence you, on the felony of the second degree, to seven years in the

appropriate state prison facility....

*Id.*, at 12-13. On December 12, 2005, the trial court re-entered judgment and sentence that previously was imposed. *Transcript*, Doc. No. 37, at 27.

Respondent contends that petitioner's *Blakely* claim is meritless because the Ohio Supreme Court did not issue its decision in *State v. Foster,* 109 Ohio St.3d 1 (2006), until after the Ohio courts already had rejected petitioner's *Blakely* claim. Respondent further contends that any *Blakely* error is harmless under *Washington v. Recuenco,* 126 S.Ct. 1546 (2006), because under *Foster*, the trial court now may impose in its discretion any sentence within the statutory range, and nothing in the record reflects that the trial court will not re-impose the same, or a greater sentence, upon a remand. *Supplemental Return of Writ*, at 16-18.

This Court is not persuaded by respondent's arguments. The date that the Ohio Supreme Court issued its decision in *Foster* concluding that portions of Ohio's sentencing scheme violated *Blakely* is not determinative of whether petitioner's sentence was unconstitutionally imposed. Further, the state appellate court's decision concluding that petitioner's sentence did not violate *Blakely* because it was within the maximum range permitted under Ohio law is contrary to or an unreasonable application of federal law as determined by the United States Supreme Court. 28 U.S.C. §2254(d); *Williams v. Taylor, supra.*

The United States Supreme Court in *Blakely* applied the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"), and held that:

> [T]he "statutory maximum"... is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant....* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," *Bishop, supra,* § 87, at 55, and the judge exceeds his proper authority.

*Blakely v. Washington, supra*, 542 U.S. at 303-304 (emphasis in original)(citations omitted).

As discussed, the Ohio Supreme Court held in *State v. Foster*, *supra,* 109 Ohio St.3d at 1, *inter alia*, that Ohio's sentencing statutes requiring judicial fact finding prior to imposition of more than the minimum term of incarceration are unconstitutional under *Blakely*. The Ohio Supreme Court stated in relevant part:

> R.C. 2929.14(B)... states:
>
> "[ *I*] *f the court* imposing a sentence upon an offender for a felony *elects or is required to impose a prison term* on the offender, the *court shall impose the shortest prison term* authorized for the offense pursuant to division (A) of this section [setting forth the basic ranges], *unless one or more of the following* applies:
>
> "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
>
> "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." (Emphasis added.)
>
> Thus, Ohio has a presumptive minimum prison term that must be overcome by at least one of two judicial findings. For someone who has never been to prison before (not necessarily a first-time offender), the court must find that the shortest term will "demean the seriousness" of the crime or will inadequately protect the public; otherwise, the court must find that the offender has already been to prison to impose more than a minimum term. R.C. 2929.14(B)(2).

16

> Under R.C. 2929.14(B), therefore, a court is not authorized to exceed
> the shortest prison term unless it makes the additional findings. *State
> v. Edmonson* (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131
> (findings required, reasons not); *State v. Comer,* 99 Ohio St.3d 463,
> 2003-Ohio-4165, 793 N.E.2d 473 (findings required for first
> offender). Since a jury verdict alone does not determine the sentence,
> R.C. 2929.14(B) violates *Blakely* principles.

*Id.*, at 19-20.  The Ohio Supreme Court excised the unconstitutional provisions of its sentencing statutes in accordance with the Supreme Court's remedial action in *United States v. Booker*, 543 U.S. 234, 764 (2005)(severing and excising unconstitutional provisions of United States Sentencing Guidelines rather than invalidating sentencing guidelines in their entirety), and remanded all cases pending on direct appeal for re-sentencing.  *Id.*, at 29-31.

The record does not reflect that petitioner previously had served a prison term.  According to defense counsel, in June 2001, petitioner was picked up by federal authorities and transported to Pennsylvania, where he was sentenced to two years incarceration, after the date that he was arrested on the charges at issue in this case.  *Sentencing Transcript, Exhibit I-5* to Return of Writ, at 7.  Thus, the trial court's imposition of more than the minimum term based on factors other than petitioner's prior criminal record violated *Blakely*.

In *Washington v. Recuenco, supra,* state law imposed a three year sentencing enhancement if a defendant used a firearm to commit an assault, but a one year enhancement if he used a "deadly weapon."  The verdict form asked the jurors whether the defendant used a "deadly weapon."  They answered that question affirmatively.  The evidence at trial was that defendant used a firearm to commit the assault.  The lower court held that it was *Blakely* error for the trial judge to make the finding that defendant used a firearm and impose a three year sentencing enhancement instead of a one year enhancement based on the jury verdict that defendant used a deadly weapon.  The United

17

States Supreme Court held that the lower court erred in holding that the error was structural and could not be harmless.  It remanded for the lower court to determine whether the facts established beyond a reasonable doubt that the *Blakely* error was harmless.

> To establish harmless error such that this Court lets stand a defendant's sentence in spite of errors at trial or sentencing below, the government must "prove that none of the defendant's substantial rights [has] been affected by the error." *United States v. Oliver*, 397 F.3d 369, 381 (6th Cir.2005) (citing Fed.R.Crim.P. 52(a)); *United States v. Barnett*, 398 F.3d 516, 530 (6th Cir.2005). *See also Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (noting that the government bears the burden of proof on harmless error); *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (same). To carry this burden, the government must demonstrate to this Court with certainty that the error at sentencing did not "cause[ ] the defendant to receive a more severe sentence." *Oliver*, 397 F.3d at 379 (internal citation omitted); *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir.2005) ("Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless.") (emphasis added).

*United State v. Johnson,* 467 F.3d 559 (6th Cir. 2006).

> In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal court must decide whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), quoting *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (internal quotation omitted). The harmless error analysis articulated in *Brecht* applies even if a federal habeas court is the first to review for harmless error. *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir.1999).

*Lakin v. Stine*, 358F.Supp.2d 605, 616 (E.D. Michigan 2005).

> Under the harmless error test, a remand for an error at sentencing is

> required unless we are certain that any such error was harmless--i.e. any such error "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

*United States v. Hazelwood*, *supra,* 398 F.3d at 801; *United States v. Christopher*, 415 F.3d 593-94 (6th Cir. 2005)(citations omitted).

However, the record here fails to reflect harmless error.  The trial court justified imposition of more than the statutory minimum sentence by use of prohibited factual findings in addition to petitioner's prior criminal record.  Therefore, this Court is unable to conclude that, absent unconstitutional fact findings, the trial court would impose the same sentence.

At least one other federal habeas court has reached the opposite conclusion in regard to harmless error analysis.  *See Shafer v. Wilson*, unpublished, 2007 WL 315760 (N.D. Ohio January 30, 2007)(holding that *Blakely* error was harmless since trial court may reimpose same sentence upon remand).  However, this Court is unpersuaded by the reasoning in *Shafer v. Wilson, supra*.

> The flaw in [such] reasoning is that it equates a possibility of no actual prejudice in terms of the eventual sentence received with an actuality of no prejudice resulting from a constitutional error. The error in *Washington* may or may not have been impossible to remedy by jury factfinding, but speculation that a judge might repeat his or her sentence without explicit factfinding does not render an error harmless as a certainty. The former scenario involves the realities of state law-either it affords an avenue to render the error harmless or it does not-while the latter presupposes a reality in which but one outcome is certain. But because more than one outcome is possible upon re-sentencing, basing harmlessness on an assumed certainty is flawed. It converts the concept of harmless error in this context into a doctrine of *always* harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any habeas court from saying for a *certainty* that the error is harmless. *See United States v. Hazelwood,* 398 F.3d 792, 801 (6th Cir.2005) ("Under the harmless error test, a remand for an

19

error at sentencing is required unless we are certain that any such error was harmless").

*Villagarcia v. Warden, Noble Correctional Institution*, Case No. 05-cv-810, 2007 WL 1028528 (S.D.Ohio March 30, 2007)(Frost, J.).

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be **GRANTED** on petitioner's claim four, in which he asserts that his sentence violated *Blakely*, that petitioner's sentence be **VACATED** and the State re-sentence petitioner within sixty days or release him.

## IV. CLAIMS FIVE THROUGH NINE

These claims are related and will be considered here. Claims five through eight all relate to the December 12, 2005, hearing conducted by the trial court pursuant to the Ohio Court of Appeals' remand on petitioner's claim that he was denied the right to fire his attorney and represent himself at trial. In claim five, petitioner asserts that he unconstitutionally was denied the assistance of counsel at that hearing. In claims six and seven, petitioner asserts that he was denied adequate notice of the hearing, and thus deprived of due process because he had inadequate opportunity to prepare. Additionally, petitioner complains that the trial court improperly permitted testimony "not sworn under oath or affirmation." *Amended Petition*, at 6. In claim eight, petitioner asserts that the trial court improperly denied his request for a new trial based on denial of the right to fire his attorney and represent himself at trial, because the trial court failed properly to "balance... petitioner's interest in self representation against the potential disruption of... proceedings and progress of the trial." *Id.* Lastly, in claim nine, petitioner asserts that he was denied his right to fire his attorney and represent himself at trial.

20

On November 9, 2005, the appellate court sustained in part petitioner's claim that he was denied his right to represent himself at trial and remanded the case to the trial court as follows:

> [A]ppellant argues the trial court erred in preventing him from firing his trial counsel.
>
> Appellant first points out that his trial counsel was suspended from the practice of law on March 19, 2003, which was coincidentally the second day of the two-day trial at issue in the case *sub judice. See Office of Disciplinary Counsel v. Treneff,* 98 Ohio St.3d 348, 785 N.E.2d 434, 2003-Ohio-1011. However, our review of the record gives no indication that word of the Ohio Supreme Court's disciplinary ruling reached the trial judge or anyone in the courtroom on that day. In *State v. Allen* (1997), 121 Ohio App.3d 666, 672, 700 N.E.2d 682, the court cited a federal appellate case, *United States v. Stevens* (C.A.10, 1992), 978 F.2d 565, for the proposition that "legal assistance provided by an attorney who had been disbarred by the federal court, but who did not receive notification of the disbarment until after trial, did not constitute error in the absence of demonstrated prejudice." *Id*. at 567-568. We therefore do not find the existence of a per se violation of appellant's rights based solely on defense counsel's suspension.
>
> We next address the issue of appellant's right to fire his retained attorney. The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, guarantees that a defendant in a criminal trial has an independent right of self representation and that he may proceed to defend himself without counsel when he voluntarily, knowingly and intelligently elects to do so. *State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta v. California* (1975), 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562. An effective waiver requires the trial court to " * * * make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." *Gibson,* paragraph two of the syllabus.
>
> The colloquy in the trial court on this issue, which took place at the end of the first day of the trial, consisted solely of the following:
>
> "THE COURT: Do you want to say something now?
>
> "MR. PERRY [AKA JORDAN]: Yeah. I wanted to-I don't feel comfortable with my counsel and I want to fire him.

21

> "THE COURT: Well, we don't play musical lawyers around here. You happen to have one of the finest lawyers in the Columbus area, and you're lucky to have him and he's going to be your lawyer throughout the rest of the case." Tr. at 157-158.
>
> Based on the foregoing, we are compelled to remand this assigned error to the trial court for further inquiry on the record of appellant's claim of unsatisfactory counsel, over and above any issues which have already been addressed either in the present appeal or in *Jordan I.* If the trial court finds the claim is unfounded, the trial court may reenter the judgment and sentence. Accord *State v. Murphy* (Feb. 22, 2000), Richland App.No. 99CA48.
>
> Appellant's Fourth Assignment of Error is sustained in part.

*State v. Jordan,* 2005 WL 3047527 (Ohio App. 5 Dist. November 9, 2005), Exhibit 2 to Return of Writ.  On December 12, 2005, after a hearing, the trial court concluded that petitioner's claim was without merit, and reimposed sentence.  The appellate court affirmed the trial court's decision as follows:

> The intended purpose of the remand was an inquiry into the reasons for the statement by Appellant as to desiring to fire his trial counsel, Mr. Treneff, at the conclusion of the first day of trial.
>
> The remand relied on *State v. Murphy* (Feb. 22, 2000), Richland App. No. 99CA48.
>
> In the preceding appeal, in such case, as in the case sub judice, no reasons were given to provide on the record a basis for the Appellant's desire to fire his counsel. With the record being devoid of sufficient inquiry, this court could not determine either that the request was reasonable or that Constitutional grounds were present.
>
> This Court in *State v. Murphy,* supra, and in the prior appeal herein, relied on *State v. Deal* (1969), 17 Ohio St.2d 17. In the prior appeal, we did not and could not, from the state of the record, determine the appropriateness of the court's denial.
>
> At the hearing on remand, the court attempted to re-create the status

as it existed on March 19, 2003, by advising of the various aspects of pro-se representation rather than obtaining for the record the reasons for the statement made at such time by Appellant.

This was not a hearing of an adversarial nature under the remand where Appellant was Constitutionally entitled to counsel as asserted by the First Assignment, nor was there an issue requiring the opportunity to defend as raised by the Second Assignment, nor was sworn testimony required. Since the hearing was for explanatory purposes only, as to the request to fire his trial counsel and had not reached the issue of proceeding pro-se, adequate notice was provided.

Appellant made the request at the conclusion of the first day of the two-day trial.

The explanation of Appellant was that he and Mr. Treneff were not getting along and that such attorney was not coming to see him. (T. at 11).

A similar request as to dissatisfaction with counsel occurred in *State v. McNeill* (1998), 83 Ohio St.3d 438, an aggravated murder case resulting in a death sentence, the defendant requested replacement counsel after the jury was impaneled. Similar claims as to lack of communication and visits from his attorney were made among other complaints.

The Ohio Supreme Court did not accept such reasons at that stage of the trial proceedings stating that the timing suggested that it was made for purposes of delay.

The court, in the hearing on remand, found the Appellant's request to be unreasonable.
As the record is now sufficient for a review by this court, we must apply the standard of abuse of discretion.

"In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.

Upon review of the record, and based on the foregoing, we find no abuse of discretion.

23

Each of the four Assignments of Error is rejected.

Therefore, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed at Appellant's costs.

*State v. Jordan*, 2006 WL 2076185 (Ohio App. 5 Dist. July 18, 2006), Exhibit 11 to Return of Writ. Again, the decision and factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(d), (e). The record fails to reflect that the state court's rejection of petitioner's claims warrants federal habeas corpus relief. *Williams v. Taylor, supra.*

A criminal defendant has the right to waive the assistance of counsel and represent himself at trial. *Faretta v. California*, 422 U.S. 806 (1975). To exercise this right, he must knowingly and intelligently waive his right to counsel. The trial court should advise him of

the dangers and disadvantages of self representation so the record will establish that 'he knows what he is doing and his choice is made with eyes open'"

*Id.*, quoting *Adams v. United States ex rel. McCann*, 317 U.S. at 279. Unconstitutional denial of a defendant's right to self-representation constitutes a structural error, "the remedy for which is a new trial." *Moore v. Haviland,* 476 F.Supp. 2d 768, 776-77 (N.D. Ohio 2007), quoting *Jones v. Jamrog,* 414 F.3d 585, 594 (6th Cir.2005) (citing *Wiggins,* 465 U.S. at 177 n. 8). A trial court is not obligated to advise a criminal defendant of the right to self-representation prior to assertion of that right. *United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994)(citation omitted). Further, in order "[t]o assert the right of self-representation, a defendant must do so unequivocally." *Id.*, at 296, citing *Hamilton v. Vasquez,* 17 F.3d 1149 (9th Cir.1994); *United States v. Jones,* 938 F.2d 737, 742 (7th Cir.1991); *Maldonado,* 348 F.2d at 15. *See also Faretta,* 422 U.S. at 835.

24

> Where a defendant merely expresses dissatisfaction with trial counsel's performance ...  we will not interpret this as a motion to proceed *pro se*; instead, it will be understood as an appeal to the trial court's discretion to substitute counsel. See  *United States v. White,* 429 F.2d 711, 712 (D.C.Cir.1970).

*United States v. Martin, supra*, 25 F.3d at 296.  Additionally, a request for self-representation must be timely made.  *Id.*  A criminal defendant's request to represent himself typically is timely if made prior to selection and swearing of the jury.  *Lewis v. Robinson*, 67 Fed.Appx. 914 (6th Cir. June 20, 2003).  In *Faretta v. California, supra*, 422 U.S. at 835-36, the Supreme Court held that the state courts had improperly denied the defendant his constitutional right to conduct his own defense by forcing him to accept the representation of the public defender.  However, "Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel" "weeks before trial."  "The record affirmatively show[ed] that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will."  *Id.* Such are not the circumstances here.

Here, petitioner never stated that he wished to represent himself at trial, nor did he make the request to fire his attorney in a timely manner.  Instead, as noted by the state appellate court, he waited until the end of the first day of trial before telling the trial judge that he was not "comfortable" with his attorney and wanted to fire him.  *Exhibit I to Return of Writ, Transcript*, March 18, 2003, at 157-158.  The trial court did not act unconstitutionally in denying that request. *Id*.  *See United States v. Conteh*, 2007 WL 1229043 (6th Cir. April 25, 2007)(no abuse of discretion in denying defendant's request for self-representation untimely made after trial had begun), citing *Robards v. Rees, supra*.

Attendant in the Sixth Amendment right to counsel is the right to

25

> secure counsel of one's choice. *Linton v. Perini,* 656 F.2d 207, 208 (6th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982) ("It is axiomatic that in all criminal prosecutions the accused enjoys the right to have assistance of counsel for his defense, and implicit in this guarantee is the right to be represented by counsel of one's own choice.") (citing *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). The right to counsel of choice is not absolute, however, and "may not be used to unreasonably delay trial." *Id.* at 209.

*Burton v. Renico*, 391 F.3d 764, 771 (6th Cir. 2004).

> It is hornbook law that "[w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel." LaFave and Israel, Criminal Procedure, § 11.4 at 36 (1984) (footnote omitted).... An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel. *United States v. Iles,* 906 F.2d 1122, 1130 (6th Cir.1990) (footnote and citations omitted).

> ... An accused who seeks substitution of counsel in mid-trial "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution." *Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir.1985).

*Adams v. Smith,* 280 F.Supp.2d 704, 719-720 (E.D. Michigan 2003). The record in this case fails to reflect such a "complete breakdown" or "irreconcilable conflict," *see id.*, so as to require substitution of counsel mid-trial.

Defense attorney Treneff apparently was the third attorney to represent petitioner. *Exhibit I to Return of Writ, Transcript*, March 18, 2003, at 11. This Court is unable to locate in the record any indication by petitioner that he was dissatisfied with his attorney prior to the short exchange referred to above which took place after the first day of trial. At the December 12, 2005, hearing

26

on the issue, petitioner stated he had wanted to fire his attorney because they "didn't see eye to eye

from the beginning of the time since he came to visit" and because they weren't getting along, and

counsel "wasn't coming to see me or nothing." *Doc. 37, Transcript,* December 12, 2005, at 9, 11.

When asked why he waited until after trial began to make the request to fire his attorney, petitioner

stated:

> [T]here was so much going on.... I'm sorry.

*Id.*, at 13.

Petitioner nonetheless contends that he had a right to represent himself on the second day

of his trial because his attorney was suspended from practicing law on that date. *Traverse,* at 9.  In

*United States v. Shabazz*, 263 F.3d 603, 612 (6th Cir. 2001), the United States Court of Appeals for

the Sixth Circuit declined to address this same issue, but noted that federal courts are split on

whether representation by an attorney who is disbarred from practicing law constitutes a per se

violation of the right to counsel:

> Shabazz argues that Curtis's representation during a period in which
> he was suspended from the practice of law, which occurred at a stage
> of the proceedings at which the Sixth Amendment right to the
> effective assistance of counsel had already attached, constitutes a per
> se constitutional violation. This argument raises an issue of first
> impression in this circuit, and the circuits have split on the
> desirability of adopting per se rules regarding the ineffective
> assistance of counsel in such circumstances. *Compare*, e.g., *United
> States v. Maria-Martinez,* 143 F.3d 914 (5th Cir.1998) (declining to
> adopt per se rules relating to deficiencies in an attorney's bar
> membership); *Vance v. Lehman,* 64 F.3d 119 (3d Cir.1995); *United
> States v. Stevens,* 978 F.2d 565 (10th Cir.1992); *United States v.
> Williams,* 934 F.2d 847 (7th Cir.1991); *United States v. Mouzin,* 785
> F.2d 682 (9th Cir.1986) *with, e.g., United States v. Novak,* 903 F.2d
> 883 (2d Cir.1990) (holding that representation by a person who
> fraudulently obtained a law license constituted a per se violation of
> the right to counsel); *Solina v. United States,* 709 F.2d 160 (2d

> Cir.1983) (observing that individual who twice failed to pass the New
> York bar exam provided ineffective assistance of counsel per se);
> *Harrison v. United States,* 387 F.2d 203 (D.C.Cir.1967) (determining
> that representation by an ex-convict who posed as a lawyer, but never
> attended law school, violated the Sixth Amendment per se).

*Id.* However, this Court is aware of no cases by the United States Supreme Court holding that an

attorney's suspension constitutes a per se violation of the right to counsel.

> The AEDPA expressly limits the source of law to cases decided by
> the United States Supreme Court. 28 U.S.C. § 2254(d). The *Williams*
> Court found that a federal court must find a violation of law "clearly
> established" by holdings of the Supreme Court, as opposed to its
> dicta, as of the time of the relevant state court decision. *See Williams*,
> 529 U.S. at ----, 120 S.Ct. at 1523. We have stated that this provision
> marks a "significant change" and prevents the district court from
> looking to lower federal court decisions in determining whether the
> state court decision is contrary to, or an unreasonable application of,
> clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1135
> (6th Cir.1998).

*Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).  Thus, for all of the foregoing reasons and

for the reasons discussed by the state appellate court, this Court concludes that petitioner has failed

to establish that he was unconstitutionally denied the right to fire his attorney and proceed *pro se*,

or that the state appellate court's rejection of this claim justifies federal habeas corpus relief.  28

U.S.C. 2254(d), (e).  Claims eight and nine are without merit.

The remainder of petitioner's claims, five through seven, likewise are without merit.  In these

claims, petitioner asserts that he unconstitutionally was denied counsel and adequate notice before

the trial court's hearing pursuant to remand on the reasons petitioner requested to fire his attorney

at trial, and that the hearing violated due process because the trial court failed to take sworn

testimony.  However, the Constitution did not mandate such requirements.

> The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process. *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Plea negotiations, guilty plea hearings, and sentencing hearings are all "critical stages" at which the right to counsel attaches. *United States v. Sammons,* 918 F.2d 592, 602 (6th Cir.1990); *French v. Jones,* 332 F.3d 430, 439 (6th Cir.2003). Although the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

*King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006).  In *Gerstein v. Pugh,* 420 U.S. 103, 122-23 (1975), the Supreme Court held that the probable cause determination, which was not adversarial in nature and did not require testimony of witnesses, was not a critical stage of the proceedings.  *See also Van v. Jones,* 475 F.3d 292 (6th Cir. 2007)(holding that consolidation hearing is not critical stage of proceedings and discussing standard to be applied to determine whether the proceeding at issue constitutes a critical stage requiring the assistance of counsel); *Hudson v. Jones*, 351 F.3d 212, 219 (repeating jury instructions previously issued by trial court is not critical stage of proceedings); *Payne v. Smith*, 207 F.Supp.2d 627, 641 (E.D. Michigan 2002)(extradition hearing is not critical stage of proceedings)(citations omitted).

The state appellate court stated that the December 12, 2005, hearing was "for explanatory purposes only," to determine the reason(s) for petitioner's request to fire his attorney after the first day of trial.  *State v. Jordan*, 2006 WL 2076185 (Ohio App. 5 Dist. July 18, 2006), Exhibit 11 to Return of Writ.  The only testimony presented was that of petitioner, regarding the reasons that he had requested to fire his attorney, why he had waited to do so until after the first day of trial, and whether he understood the risks of self-representation.  *Doc. #37, Transcript*, December 12, 2005. It is unclear how petitioner could have been prejudiced by the trial court's failure to have petitioner

swear or affirm that he was telling the truth.  To the extent that petitioner argues that the trial court thereby violated state law, such claim is not appropriate for federal habeas corpus review.  28 U.S.C. §2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984)(A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law"); *see also Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  Further, petitioner was not without the assistance of counsel.  His appellate attorney Gerstner was present and at petitioner's request appointed as "back up" counsel.  *Id.*, at 8. Contrary to petitioner's allegations here, he stated that he was prepared to go forward with the hearing.  *Id.*, at 8.  He did not request a continuance to obtain the presence of another attorney nor did he state that he had inadequate notice or time to prepare.  *See id.*  In view of all of the foregoing, this Court concludes that petitioner has failed to establish that the state court's decision denying claims five through seven is unreasonable so as to justify federal habeas corpus relief.

Claims five through seven are without merit.

For all of the foregoing reasons, Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus conditionally be **GRANTED** on petitioner's claim four, in which he asserts that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004), that petitioner's sentence be **VACATED** and the State re-sentence petitioner within sixty (60) days or release him.  It is recommended that the remainder of petitioner's claims be **DISMISSED**.  Petitioner's request for an evidentiary hearing, *see Traverse*, is **DENIED**.  Petitioner's request for a copy of the trial transcript, Doc. No. 40, is **DENIED**, as moot.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the

objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                    /s/ Terence P. Kemp
                    United States Magistrate Judge